# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER NICOLE HENRY,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:19-cv-01690-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 22, 28, 29) |

**I.**

**INTRODUCTION**

Heather Nicole Henry ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. Plaintiff filed her opening brief in this matter on October 12, 2020. (ECF No. 22.) Defendant filed an opposition on December 14, 2020. (ECF No. 28.) Plaintiff filed a notice of submission on the record in lieu of a reply. (ECF No. 29.) The matter is submitted on the parties' briefs, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and the matter has been assigned to the undersigned for all purposes.  (See ECF Nos. 7, 8, 30.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on April 2, 2016. (AR 101, 102.) Plaintiff's applications were initially denied on October 10, 2016, and denied upon reconsideration on December 21, 2016. (AR 133-137, 145-149.) Plaintiff requested and received a hearing before Administrative Law Judge Janice E. Shave ("the ALJ"). Plaintiff appeared for a hearing on October 30, 2018. (AR 36-74.) On November 21, 2018, the ALJ found that Plaintiff was not disabled. (AR 12-30.) The Appeals Council denied Plaintiff's request for review on October 1, 2019. (AR 1-3.)

**A.    Relevant Hearing Testimony**

A vocational expert ("VE"), Bonnie Drumwright, testified at the hearing. (AR 41-43, 68-73.) The VE classified Plaintiff's past work history as a childcare worker, Dictionary of Occupational Titles ("DOT") 359.677-018, SVP 4, light but performed as medium; supervisor of cashiers, DOT 211.137-010, SVP 7, light but performed as heavy; and cashier clerk, DOT 211.462-014, SVP 3, light but generally performed as medium. (AR 42.)

The ALJ presented a hypothetical of an individual of the same age, educational and vocation background as Plaintiff. (AR 69.) This individual is capable of light exertion with a sit/stand option at approximately 30 to 45 minute intervals to switch or shift positions; could never climb ladders, ropes or scaffolds; never kneel, crouch or crawl. (AR 69.) She could occasionally bend at the waist; frequently climb ladders, ropes, stairs and ramps; and could frequently balance with no hand held assistive device needed. (AR 69.) The individual must avoid concentrated exposures to extreme cold or extreme heat; and all expose to unprotected heights, hazardous or moving machinery, and direct sunlight. (AR 69.)

The VE opined that this individual could not perform Plaintiff's past work as she performed them. (AR 69.) However the jobs of supervisor of cashiers and childcare workers as usually performed were congruent with the hypothetical. (AR 69-70.) The individual could also perform work as a cashier 2, DOT 211.462-010, SVP 2, light. (AR 70.) Due to the need to

alternate between sitting and standing the numbers would be eroded by 90 percent to arrive at the number of jobs that would allow for the stand/sit option. (AR 70.) This would result in approximately 82,000 jobs in the national economy. (AR 70.) The VE clarified that the DOT does not describe or explain erosion, but that the information was based on his personal experience. (AR 70.) The individual would also be able to work as a storage facility rental clerk, DOT 295.367-026, SVP 2, light, with about 76,000 jobs in the national economy; and a ticket seller, DOT 211.467-030, SVP 2, light with about 20,000 jobs in the national economy. (AR 70.)

The ALJ proffered a second hypothetical of the same individual with the additional limitation that she would need to elevate both legs approximately 12 to 16 inches consistent with the height of an overturned personal office trash can or recycle bin under the desk or table at will when seated. (AR 71.) The VE opined that this would not make any difference and the same jobs would remain available. (AR 71.)

The ALJ proffered a third hypothetical of an individual with the same limitations as hypothetical two, but who would also require a ten minute break three times per day to recline and elevate the legs to heart level which could take place during regularly scheduled breaks. (AR 71.) The VE opined that this would not have any effect on the jobs available. (AR 72.) The VE clarified that the DOT does not describe job erosion or the impact of needing to elevate one's feet or the sit/stand option and all the opinions were based upon her professional experience of over 39 years as a Vocational Rehabilitation Consultant. (AR 72.)

Plaintiff's attorney proffered the third hypothetical except that there would be unscheduled breaks outside of the two regular breaks and lunch period. (AR 72.) The VE opined that an employer would not tolerate a person leaving the work station to go lay down or elevate to that degree or that many times a day and there would not be gainful employment. (AR 72.)

Plaintiff's attorney added the limitation that the individual would be absent more than four days per month. (AR 73.) The VE opined that an employer would not tolerate that many absences per month. (AR 73.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2017.
- Plaintiff has not engaged in substantial gainful activity since May 1, 2016, the amended alleged onset date.
- Plaintiff has the following severe impairments: lupus, positive(+) ANA test with polyarthralgia including right knee pain and low back pain; peripheral neuropathy; degenerative disc disease; status-post fatty mass or hemangioma removal from spine; mild spondylotic changes of the cervical and thoracic spine; chronic fatigue; and obesity.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on August 23, 1984.  She was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports finding Plaintiff is not disabled, whether or not Plaintiff has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs existing in significant numbers in the national economy that she can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2015, through the date of this decision.

(AR 17-29.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which,

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred at step five because she did not consider accommodation as a factor under the American's with Disabilities Act ("ADA"). Plaintiff argues that, since she needs to elevate both her legs, two trash cans would be required to elevate her legs and that crosses the line and it would be dangerous and a misuse of trash cans to provide accommodation. Further, Plaintiff argues that the residual functional capacity is not specific as to the relevant height of the chair that would be used for the sit and stand option and it is not clear if a stool that is 36 inches high or a work chair that is 24 inches high would be required. Plaintiff asserts that it would be dangerous for her use a trash and to find otherwise requires a reasonable accommodation and it is unclear from this record whether a reasonable accommodation is needed for Plaintiff to work in the cited occupations.

Defendant counters that Plaintiff's challenge primarily concerns her characterization of the need to elevate her legs as a reasonable accommodation relying on Cleveland v. Policy Management Sys. Corp., 526 U.S. 795 (1999). Defendant contends that Plaintiff's argument fails as the need to elevate her legs does not meet the definition of a reasonable accommodation as considered by the Court in Cleveland. Further, Defendant argues that the Ninth Circuit has specifically found that a sit/stand option does not constitute an accommodation. Defendant

asserts that the ALJ specifically testified that the limitations would not preclude work the based on his professional experience of 39 years as a vocation expert, and the ALJ reasonably relied on this testimony.

Plaintiff replies that the matter is submitted on the record.

Plaintiff relies on Cleveland, which addressed whether "the law erects a special presumption that would significantly inhibit an SSDI recipient from simultaneously pursuing an action for disability discrimination under the Americans with Disabilities Act of 1990 (ADA), claiming that 'with ... reasonable accommodation' she could 'perform the essential functions' of her job." 526 U.S. at 797.  The Supreme Court held,

> these two seemingly divergent statutory contentions are often consistent, each with the other.  Thus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim.  Nor does the law erect a strong presumption against the recipient's success under the ADA.

Id. at 797-98.

The Social Security Administration ("SSA") does not take "reasonable accommodation" into account when determining whether a claimant is disabled for the purposes of SSDI.  Id at 803.  "The omission reflects the facts that the SSA receives more than 2.5 million claims for disability benefits each year; its administrative resources are limited; the matter of 'reasonable accommodation' may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide."  Id.  "[I]n order to process the large number of SSDI claims, the SSA administers SSDI with the help of a five-step procedure that embodies a set of presumptions about disabilities, job availability, and their interrelation."  Id.  This sequential process inevitably simplifies the process, "eliminating consideration of many differences potentially relevant to an individual's ability to perform a particular job."  Id. at 804.  Finally, if an individual has merely applied for and is not awarded SSDI benefits, "any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system."  Id.

The Social Security regulations do not require that the ALJ incorporate ADA

accommodations into the residual functional capacity assessment.  20 C.F.R. § 404.1545; Glaspy v. Berryhill, 771 F.App'x 747 (9th Cir. 2019)[3].  Further, the regulations do not require that the ALJ consider reasonable accommodation in determining whether work exists in the national economy at step five of the sequential evaluation.  20 C.F.R. § 404.1566; Glaspy, 771 F.App'x 747.  An ALJ properly applied the law because an ADA accommodation was not relevant to determine whether she could perform other work at step five of the sequential evaluation. Glaspy, 771 F.App'x 747; see also Johnson v. State, Oregon Dep't of Human Res., Rehab. Div., 141 F.3d 1361, 1366 (9th Cir. 1998) ("The ADA and the disability provision of the Social Security Act have different purposes, and have no direct application to one another."); SSR 11-2P § D (1)(e), 2011 WL 4055665 (Sept. 12, 2011); Titles II & Xvi: Documenting & Evaluating Disability in Young Adults, SSR 11-2P (S.S.A. Sept. 12, 2011) ("When we determine whether a person can perform his or her past relevant work, we do not consider potential accommodations unless his or her employer actually made the accommodation.").

At Step Four, the ALJ assesses the claimant's "residual functional capacity," which is defined as the most that a claimant can do despite the "physical and mental limitations" caused by his impairments and related symptoms.  20 C.F.R. § 416.945(a)(1).  At Step Five, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 416.920(g).  At this step, the ALJ considers potential occupations that the claimant may be able to perform.  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see 20 C.F.R. § 416.966.

The ALJ relies on the DOT, which is the Social Security Administrations "primary source of reliable job information" regarding jobs that exist in the national economy, in making this determination.  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) ... required of

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

the worker for satisfactory job performance.' " Zavalin, 778 F.3d at 845 (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)).

Along with the DOT, the ALJ will rely on the testimony of a vocational expert who testifies about specific occupations that a claimant is able to perform based on his residual functional capacity. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. § 416.966(e). In concluding the Step Five analysis the ALJ determines "whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy." Valentine, 574 F.3d at 689; see also 20 C.F.R. § 416.920(g). An ALJ cannot rely on the VE's testimony without inquiring whether it conflicts with the DOT and obtaining a reasonable explanation for any apparent conflict. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).

Here, the ALJ relied on the testimony of the VE that work exists in the national economy for a person with Plaintiff's residual functional capacity. The VE opined that a person with Plaintiff's limitations would be able to work as a cashier 2, DOT 211.462-010, SVP 2, light.; a storage facility rental clerk, DOT 295.367-026, SVP 2, light; and a ticket seller, DOT 211.467-030, SVP 2, light. (AR 70.) The ALJ further considered how the job base would be eroded due to the requirement that Plaintiff required a sit/stand option and still found that a significant number of jobs, around 180,000, remained that the individual would be able to perform. (AR 70.) "A VE's recognized expertise provides the necessary foundation for his or her testimony" and the ALJ may properly rely on the testimony provided by the VE. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, Plaintiff argues that it is unclear whether she would require a reasonable accommodation, however, the ALJ clarified that no particular equipment would be needed for the individual to elevate her legs (AR 71) and the VE testified that, while the DOT does not describe the impact of needing to elevate one's feet or the sit and stand option, her opinion was based on her 39 years as a Vocational Rehabilitation Consultant. (AR 72.) The ALJ's testimony is substantial evidence to support the ALJ's finding that Plaintiff was not disabled.

Accordingly, Plaintiff's appeal of the final decision of the Commissioner is denied.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in determining that a significant number of jobs exist in the national economy that a person with Plaintiff's residual functional capacity would be able to perform.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Heather Nicole Henry. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **February 16, 2021**

UNITED STATES MAGISTRATE JUDGE